Mason v New York Univ. (2025 NY Slip Op 02039)

Mason v New York Univ.

2025 NY Slip Op 02039

Decided on April 08, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 08, 2025

Before: Renwick, P.J., Kapnick, Shulman, Rodriguez, Rosado, JJ. 

Index No. 156229/18|Appeal No. 4057|Case No. 2024-05958|

[*1]Joshua Schuyler Mason, M.D., Plaintiff-Appellant,
v
New York University, Defendant-Respondent, NYU Langone Hospitals, et al., Defendants.

Watkins Law, New Paltz (Christopher D. Watkins of counsel), for appellant.
Bond, Schoeneck & King PLLC, White Plains (Michael P. Collins of counsel), for respondent.

Order, Supreme Court, New York County (Paul A. Goetz, J.), entered on or about August 6, 2024, which, to the extent appealed from as limited by the briefs, granted in part the motion of defendant New York University (NYU) for summary judgment dismissing the causes of action for defamation per se and libel as against them, unanimously affirmed, without costs.
Supreme Court properly dismissed the causes of action for defamation (see Dillon v City of New York, 261 AD2d 34, 38 [1st Dept 1999]). The letter from the Chief Regulatory Officer of the NYU School of Medicine to the New York State Department of Health Office of Professional Medical Conduct (OPMC), was protected by qualified privilege, as NYU was legally obligated to report plaintiff's termination under Public Health Law § 2803-e(1)(a). Moreover, plaintiff failed to raise a triable issue of fact with respect to whether the letter was published with common-law malice (see Stega v New York Downtown Hosp., 31 NY3d 661, 669-70 [2018]; Liberman v Gelstein, 80 NY2d 429, 437-438 [1992]). Because of the nature of plaintiff's termination, NYU was required to report plaintiff's termination, and plaintiff failed to demonstrate that the author's "one and only cause for the publication" of the allegedly defamatory statements was "spite or ill will" (id. at 439). Moreover, the record does not reflect any ill will or intentional falsehood on the part of the NYU employees who composed the letter to OPMC. The letter did not denounce plaintiff's character, and the statements regarding plaintiff's conduct were "specific and verifiable and were not so vituperative or overbroad as to raise a question of malice" (Present v Avon Products, Inc., 253 AD2d 183, 189 [1st Dept 1999], lv dismissed 93 NY2d 1032 [1999]).
Plaintiff also failed to present clear and convincing evidence demonstrating that the OPMC letter was written with constitutional malice, as the letter's author reasonably believed the statements in the letter to be true (see Kipper v NYP Holdings Co., 12 NY3d 348, 354 [2009]). NYU employees investigated the report from a resident regarding plaintiff's conduct and determined that the report was corroborated by other hospital staff, and the statements in the letter were based on information received from the investigators. Thus, the statements "were not made with knowledge of their falsity or reckless disregard of whether or not they were true" (Konrad v Brown, 91 AD3d 545, 546 [1st Dept 2012]). In addition, any alleged "shortcomings" in NYU's investigation are "insufficient to establish malice" (Atkins v Flat Rate Movers, Ltd., 134 AD3d 437, 437 [1st Dept 2015]; see also Sweeney v Prisoners' Legal Services of New York, Inc., 84 NY2d 786, 793 [1995]; Saez v City of New York, 270 AD2d 55, 55 [1st Dept 2000]).
Similarly, a letter sent from NYU Langone Health's Senior Director of Professional Affairs to the Arizona Medical Board, was protected by the common-interest privilege, and plaintiff failed to adduce [*2]evidence that it was published with either common-law or constitutional malice (see Schwartz v Society of N.Y. Hosp., 232 AD2d 212, 212-213 [1st Dept 1996]). As to common-law malice, the Senior Director of Professional Affairs wrote the letter in good faith, at plaintiff's request, after receiving his authorization to provide information regarding his termination. Furthermore, the Senior Director wrote the letter with assistance from NYU's Chief Regulatory Officer and legal counsel regarding what information needed to be included in the letter. As to constitutional malice, at the time of the letter an additional investigation had concluded that the decision to terminate plaintiff was triggered by his failure to respond in a timely manner to a request for help with a distressed patient shortly after he had been placed on a remedial plan because of concerns about plaintiff's interactions with residents. Thus, there was no issue of fact as to malice (see Smith v Montefiore Med. Ctr., 116 AD3d 573, 574 [1st Dept 2014]). 
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 8, 2025